No. 5081.

CORA and LOUISA BRUSLE and HUSBAND *v.* MRS. LAVINIA JANE HAMILTON, widow of R. C. Downes; O. P. HEBERT, Intervenor.

The special mortgage given by the natural tutrix of the plaintiffs in 1858 was strictly in conformity to law, and the tacit mortgage sought to be enforced against her or those who hold under her was legally extinguished.

It is well settled that the holder of property under recorded titles, can give a valid mortgage thereon where the mortgagee has acted in good faith, and the transaction is a real one, regardless of the simulation of the mortgageor's title.

APPEAL from the Fifth Judicial District Court, parish of Iberville. *Cole, J. E. B. Talbot,* for plaintiffs and appellants. *Barrow & Pope,* for defendant and appellee and for intervenor.

WYLY, J. The plaintiffs alleging they have a tacit mortgage on the lands which their natural tutrix sold to the defendant, Mrs. Downes, in 1854, and that by a clause in the sale the vendee agreed to pay each heir his virile share, on arriving at the age of majority, out of the price remaining in her hands reserved as protection against their tacit mortgage, sue her to recover the sum of $2021 04, due each of the plaintiffs, and also to enforce the tacit mortgage which they claim on said lands. They also sue to annul, for simulation, the sale of the lands from Dupuy and Greaud by their tutrix in 1858, upon which a special mortgage was given by her in lieu of their tacit mortgage, pursuant to section seven of the act approved fifteenth of March, 1855, and also to have declared null said special mortgage on account of said simulation.

O. P. Hebert, the son of the defendant, Mrs. Downes, intervened, claiming that he is the owner of the lands upon which the plaintiffs seek to enforce their alleged mortgage, having purchased the same at a judicial sale to enforce his tacit mortgage against the defendant, Mrs. Downes, his natural tutrix. He also alleges that the mortgage under which he acquired the property is superior in rank to all others bearing thereon. He also adopts the answer of the defendant, Mrs. Downes, alleging that the plaintiffs' tacit mortgage was extinguished by the special mortgage on other lands which their natural tutrix gave in 1858, pursuant to the provisions of the act of fifteenth of March, 1855, and further alleging the slave consideration of the debt which the plaintiffs are seeking to enforce in this suit.

The court rejected the demand of the plaintiffs, decreed that the tacit mortgage of the plaintiffs, bearing on the land in question, was extinguished by the special mortgage given by their natural tutrix in 1858, and decreed that the tacit mortgage of the intervenor, O. P. Hebert, was superior in rank to the special mortgage given by Mrs. Downes to Mrs. Brusle, to secure the purchase price of said lands. From this judgment the plaintiffs appeal.

Section seven of the act of fifteenth of March, 1855, "An Act relative to minors," declares "that any surviving father or mother who shall hereafter become the tutor of their minor children, may give a special mortgage on immovable property, not including slaves, for the security of the right and property of their said children, and the faithful discharge of their functions as tutor; provided, that a meeting of the family of said minors, duly called according to law, on the petition of said father or mother, shall declare that the property offered to be specially mortgaged is in their opinion of sufficient value to secure the rights of the children in capital and interest. From and after the execution of the special mortgage by the natural tutor, as aforesaid, all the remaining property of the father or mother acquired or to be acquired, shall be completely discharged from the legal mortgage arising from the tutorship." The special mortgage given by the natural tutrix of the plaintiffs in 1858, was strictly in conformity to the statute referred to, and we are of opinion that the tacit mortgage sought to be enforced, was legally extinguished. The simulation of the title of the natural tutrix, if such were the case, did not injure the plaintiffs nor in any manner impair the security afforded them by the special mortgage; because it is well settled that the holder of property under recorded titles, can give a valid mortgage thereon where the mortgagee has acted in good faith and the transaction is a real one, regardless of the simulation of the mortgageor's title. Besides, this is not a controversy with the natural tutrix, but between the plaintiffs and third parties.

The intervenor sets up a title to the property, which was acquired under the enforcement of his tacit mortgage against the defendant, Mrs. Downes, and the restoration of the tacit mortgage set up by the plaintiffs would affect his rights to the property.

We think the court did not err in holding the superiority of the mortgage under which the intervenor acquired the property in question. But there was error in rejecting plaintiffs' demand for a personal judgment against the defendant, Mrs. Downes ; because by a clause in the act of sale from Mrs. Brusle to her, she assumed to pay each heir, on coming of age, out of the funds in her hands, his virile share of the sum due the minors by their natural tutrix. As the consideration of the debt out of which said shares were to be paid is mixed, part slaves and part lands and movables, and as we are unable from the record to fix the relative amount of each, we will remand the case in order that the court below may determine the amount of plaintiff's claim, recoverable in a personal judgment against Mrs. Downes. 21 An. 757, Sandige v. Sanderson.

It is therefore ordered that the judgment herein be affirmed in all

10

respects, except wherein it rejects plaintiffs' demand for a personal judgment against the defendant, Widow Downes; and in this respect it is ordered that said judgment be annulled; and it is further ordered that this cause be remanded in order that on a new trial it may be determined what part of the debt sought to be enforced against Mrs. Downes personally, was for lands and movables, and what part for slaves, with instruction that plaintiffs' demand be reduced so as not to embrace the proportion thereof which was for the price of slaves. It is further ordered that appellees pay costs of appeal.